GEORGE METCALFE, ET AL., v. MERCHANTS & PLANTERS'
BANK, ET AL.

[42 South. Rep., 377.]

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS.  *Statutory preferences.*
    *Code* 1892, § 3077.  *Trust fund.*

    Under Code 1892, § 3077, making moneys deposited in bank by any
    officer having the custody of public funds a trust fund and not
    liable to the claims of general creditors of the bank, public
    moneys deposited by a sheriff have priority of payment on an
    assignment for the benefit of creditors.

2. SAME.  *Setting aside an assignment.  Code* 1892, *ch.* 8.  *Doubtful
    pleading.  Election.*

    It is not error to compel parties filing a pleading of doubtful char-
    acter in the court wherein an assignment for the benefit of
    creditors is being administered under Code 1892, ch. 8, to elect
    whether it shall be treated as a cross-petition under the statute
    or as an original bill in equity.

3. SAME.

    A general charge that an assignment for the benefit of creditors
    was "not lawfully executed," is demurrable since it fails to state
    facts to show how it was unlawful.

4. SAME.  *Improper assignee.*

    The fact that an improper assignee has been appointed does not
    warrant a cross-petition under the statute, since any creditor
    can apply for his discharge.

5. SAME.  *Judges.  Disqualification.*

    An averment in a pleading that the presiding judge of the court
    was disqualified to preside in the case "because a party to the
    suit and interested therein," is insufficient where the record
    showed that he was not a party, and the pleading failed to aver
    how he was interested.

FROM the chancery court of Washington county.

HON. PERCY BELL, Chancellor.

Metcalfe and others, appellants, were complainants in the
court below, and the Merchants and Planters' bank of Green-

ville and others, appellees, were defendants there. From an interlocutory decree requiring complainants to determine by election the character of their pleading, whether an original bill or a cross-petition under Code 1892, ch. 8, and from a further decree sustaining defendants' demurrer to their petition, the complainants appealed to the supreme court.

The Merchants and Planters' bank, being financially involved, made a general assignment for the benefit of its creditors, making one Atterbury assignee. Atterbury accepted the trust and filed the petition and bond in the chancery court required by the code chapter on assignments for the benefit of creditors (Code 1892, ch. 8), but soon thereafter resigned. The court thereupon, on the request of the bank and certain of its creditors, appointed as his successor one Walker, the former president of the bank, by whom, as its representative officer, the bank executed the assignment for the benefit of its creditors. At this stage of the proceedings the appellants, former depositors, holders of bank exchange, and one stockholder of the bank, filed in the cause what purported to be a bill of complaint, or petition, against not only the assignee, Walker, but also against the bank, its officers, directors, sureties, and certain public officials, among them the sheriff of the county, who had deposited official funds in the bank. This pleading was voluminous, seeking relief against the defendants thereto, some of whom were not defendants to the assignee's petition. It charged that the bank had, with the knowledge of its directors and officers, been insolvent for more than five years prior to the date of the assignment; that during this period the directors and officers had remained practically the same; that forced and unearned dividends had been declared and received by the defendant stockholders with knowledge of the bank's insolvency; that false financial statements had been published; that loans had been made to directors and other officers named in excess of the amount allowed by law; that the funds of the bank had been to

a great extent used to assist the private ventures of different individuals; that the sheriff of the county was claiming a lien on the assets of the bank for $6,000 of public money deposited, which complainants contended should be postponed to previous depositors, and that the chancellor was disqualified to pass upon the assignment and make orders thereon because interested. It did not, however, claim that the assignment was fraudulent, but merely alleged that it was not "lawfully executed."

As regards the contention of complainants touching the disqualification of the chancellor, the records already on file in the cause, and referred to in appellant's pleading, showed that in the list of creditors filed with the petition of Atterbury, assignee, the name of the chancellor appeared; but subsequently, and before the filing of appellants' petition, the assignee filed a revised list of creditors, which showed that the name of the chancellor had been erroneously listed as a creditor, and eliminating it from the list. Subsequent orders taken in the cause show that he was a debtor of the bank, and the status of such indebtedness was ascertained by a special chancellor. All other matters in the cause were passed upon by the chancellor.

On motion of defendants the complainants were compelled to elect whether their petition should be treated as an original bill in equity, or as a cross-petition under Code 1892, ch. 8, providing that any creditor may file a cross-petition against the assignee and other persons defendant to show that the assignment should not be enforced. Exception was taken by complainants to this action of the court, and complainants then elected to stand in the cause as upon a cross-petition. Thereupon the various defendants severally demurred to the petition, and the demurrers were sustained and the petition dismissed. The opinion further states the facts.

*Jayne & Watson,* for appellants.

The chancellor erred in not rescuing himself from trying this cause. Section 165 of the state constitution states that

no judge of any court shall preside on the trial of any cause wherein he may be interested. This section has been passed on by this court in *Ferguson* v. *Brown,* 75 Miss., 214 (s.c., 21 South. Rep., 603), and subsequently in *Kirby* v. *State,* 78 Miss., 175 (s.c., 28 South. Rep., 846). And see, also, *Lemon* v. *Peyton,* 64 Miss., 161 (s.c., 8 South. Rep., 235). At the time of the rendition of the different decrees and orders in the case the chancellor was a beneficiary in the assignment as a creditor of the bank; was also indebted to the bank under several obligations, and was made a party to the cause by the petition of Atterbury for approval of his bond and administration of the trust under the assignment.

Although the above cases show the trend of opinion in this state, our court has never passed upon the exact question as to eligibility of the chancellor as here presented, nor has it indicated conclusively what pecuniary interest is sufficient to disqualify a judge. Hence we must look to the decisions of other tribunals. At common law the principle was well established that no man may act as judge in his own cause. 17 Am. & Eng. Ency. Law, 732; Hughes on Procedure, vol. 1, sec. 159 *et seq.* As to the exact nature of the diqualifying interest, the decisions in various states differ somewhat. We refer to some of these decisions:

Indiana: Where a justice of the peace rendered a judgment in favor of a party whom he had represented as attorney in the cause the judgment was void. *Chicago, etc., R. R. Co.* v. *Summers,* 113 Ind., 10.

Michigan: Where the trial judge was a nephew by marriage of one of the complainants and a cousin of two others, held that he was disqualified to sit in a cause wherein they were interested. *Horton* v. *Horton,* 79 Mich., 642.

New Hampshire: In a case where the probation of a will was written by the probate judge, held that he was disqualified as to issues involved. *Moses* v. *Julian,* 45 N. H., 52.

Massachusetts: Where the probate judge appointed his wife's brother administrator of an estate of which her father was the principal creditor, held that the judge was disqualified by reason of personal interest, and the appointment was void. *Hall* v. *Thayer,* 105 Mass., 219.

Texas: Where a wife sued her husband for divorce on ground of abandonment, and the judge who presided at the second trial of the cause was attorney for the husband on the first trial, held he was disqualified to act as judge. *Newcomb* v. *Light,* 56 Tex., 141.

Nevada: Where a judge who had been previously of counsel in one phase of a cause subsequently as judge entered an order extending the time in which to file a statement in the case on its coming before him for trial on the merits, held that the act of the judge was void. *Frevert* v. *Swift,* II Pac. Rep. (Nev.), 273.

New York: In a case where a person had been convicted before the county court, consisting of a county judge and a justice of the peace, the justice of the peace was related to the defendant within the sixth degree of kin, consequently disqualified. Subsequently the same person, defendant above, pleaded the former conviction. Held, that the plea was bad, as the former conviction was void. *People* v. *Connor,* 142 N. Y., 130.

California: Where the question in the case involved the issue of city bonds running forty years, and the trial judge held land in the city, he was disqualified to act as judge in the case. *Meyer* v. *San Diego,* 53 Pac. Rep., 434.

Louisiana: Where the judge was remotely connected with a claim, held that he was disqualified to pass upon the homologation of the same. *Succession of Jan,* 10 South. Rep., 6.

West Virginia: Several judgment creditors sought to satisfy their judgments through an equitable proceeding against the common debtor. Among the judgments represented was one recovered in favor of the presiding judge, but which he had

assigned without recourse to one of the creditors mentioned. Held that the judge was disqualified, inasmuch as there was an implied warranty on his part that the judgment was what it purported to be. *Findley* v. *Smith,* 26 S. E. Rep., 370.

Florida: In a case involving probate of a will where the interests of a church were concerned, held that the judge, who was one of the vestry of the church, was disqualified. *State* v. *Young,* 12 South. Rep., 673.

Oklahoma: Where the judge who appointed a receiver was himself a debtor of the bank of which the receiver was appointed, held that the judge was a party interested. *Bank* v. *Nat. Bank of Guthrie,* 51 Pac. Rep., 119.

It is contended, however, by opposing counsel, that the allegation of interest on the part of the chancellor was not sufficient to make it necessary for him to rescue himself. The allegation is as follows: "That the chancellor passing upon such matters, making the orders therein, was disqualified to act in the matter, adjudicate thereon, or to make the orders, decrees and appointments therein made, because he was a party to said suit and interested in the cause, and is still a party thereto and interested therein." We think this is a clear statement of facts, and not to be construed merely as a legal conclusion on the part of complainants. The term "party to a suit" needs no definition.

In the English case of *Dimes* v. *Grand Junction Canal,* Leading Cases, 176, cited in Hughes on Procedure, vol. 1, sec. 159, the question of interest of a presiding judge was fully discussed by the house of lords. The case had been heard before the vice chancellor, who had granted the relief sought by the canal company, and the lord chancellor, a shareholder in the company (which fact was unknown to the defendant in the suit) had affirmed the order of the vice chancellor. It was held by the house of lords, on appeal, that the decree of the lord chancellor was, under the circumstances, voidable, and should be reversed. It will be noted that the question of the

qualification of the lord chancellor was not raised until the cause had reached the house of lords. But this fact did not affect the ruling of this final tribunal. We quote from the language voicing the ruling of the house of lords: "It will have a most salutary effect on inferior tribunals when it is known that this court of last resort, in a case in which the lord chancellor of England had an interest, has considered that his decree was on that account a decree not in accordance with law, hence should be set aside."

The court below further erred in compelling the complainants, appellants here, to elect whether they would proceed by way of original bill or by way of cross-petition. We do not think the rule as to election applies in this case. A complainant may be required to elect which of two suits he will proceed with, but surely not which of two merely alternative reliefs he will pray for. Bills of equity drawn with a double aspect are not subject to the rule requiring the complainant to elect upon which of the cases presented he will proceed. 1 Daniel Eq. (6th ed.), sec. 384; Beach Eq. Pl., sec. 114; *Kaufman* v. *Whitney,* 50 Miss., 103.

Code 1892, ch. 8, § 121, gave complainants the right to file a cross-petition in the cause, and to make the assignor and other persons defendant thereto, the right existing under the chapter to show that the assignment was fraudulent (not questioned here, however); to show, further, that the assignment should not, for other reasons, be enforced, and to show that other property than in the assignee's hands was liable for the assignor's debts. Accordingly complainants had the right, under the claim for relief, to have the court pass upon the liability of the officers and directors of the bank for malfeasance in the dissipation of the bank's assets; and to have the court pass upon the liability of stockholders for dividends wrongfully declared and paid out to them. Thompson on Corporations, secs. 3089, 4152, 6479.

As the assignment was a general one, the major portion of the assets being already in the hands of the assignee, and complainants being invited to come in and litigate with the assignee and being permitted by statute to bring in new parties by cross-petition, we think the chancery court had full jurisdiction of all matters presented in complainants' petition. *Weimer* v. *Scales,* 74 Miss., 1. In fact, Code 1892, § 8, provides that suits affecting the assignee must be filed in the chancery court.

Counsel for appellees seem to be much disturbed because no name was given to the petition or bill of complaint. We think it immaterial by what name the pleading was called, so long as it made out a case in equity. The case of *Mahorner* v. *Forcheimer,* 73 Miss., 302 (s.c., 18 South. Rep., 570), confirms our theory, and shows that the code chapter on assignments for benefit of creditors allows such suits as the one at bar.

As regards the deposit by the sheriff and the fund of the levee board, we think the court below erred in decreeing that the county and levee board should have priority in payment at the hands of the assignee over the other creditors. If, under *Fogg* v. *Bank,* 80 Miss., 755 (s.c., 32 South. Rep., 285), construing Code 1892, § 3077, a charge on the assets of the bank at date of its failure is given in favor of public officers having official trust deposits, will not such charge be confined to the money on hand, and not allowed to reach moneys subsequently collected by the assignee?

Before these public funds were deposited with the bank a guarantee bond was executed by the officers and directors of the bank. These officers and directors knew of the involvency of the bank at the time. We think that the bond should be subjected and exhausted before the public funds are allowed to be held as a charge against the assets of the bank, and, in default of this, complainants should be subrogated to the rights of these officials against said sureties.

The court below sustained the demurrers to the petition of

complainants, on the ground that there was misjoinder of complainants and misjoinder of defendants. This was error under the circumstances. The complainants were certainly jointly interested in the matters pertaining to the bank and to the assignment. And the defendants were in the same position. Equity had jurisdiction to determine all of the matters involved and charged in the petition. A multiplicity of suits should be avoided where the general objects sought by the bill of complaint may be advanced by combining the subjects of controversy, provided there is a common duty on defendants and common interest among complainants. *Hardie* v. *Bulger*, 66 Miss., 577 (s.c., 6 South. Rep., 186).

*Percy & Campbell,* for appellees.

The allegation in complainants' petition that the chancellor was disqualified to preside on the trial of this cause, is too general in its nature to constitute more than a legal deduction or conclusion of the pleader, which is not admitted by the defendants' demurrer. In order for the chancellor to determine whether there was such interest as would disqualify him, it was necessary for the pleader to set out the facts, so that the nature of the interest alleged might clearly appear. It is impossible from the allegation—which is quoted in full in the brief of appellants—for the court to know how the chancellor was a party to the suit. The allegation is defective in that it merely sets out deductions and not facts.

In the second place, in considering this question of the chancellor's alleged disqualification, as appellants elected to proceed by cross-petition in the cause, we are entitled to look at the record in the original proceeding, to ascertain what interest, if any, the chancellor had. It appears that in the list of creditors filed with the petition of J. T. Atterbury, assignee, the name of Percy Bell, the chancellor, appears; but that a few days later the assignee filed a revised list of creditors which shows

that the chancellor's name had been erroneously listed as a creditor; and an order was made striking his name from the list of creditors. So, at the date of filing of petition by appellants the name of Percy Bell did not appear as a party to the proceedings. Subsequent orders taken in the case show that he was a debtor to the bank; but the status of such indebtedness was duly ascertained by a special chancellor.

We submit that the fact that the chancellor is one of the debtors of the corporation making the assignment does not give him such an interest in the receivership proceedings as to disqualify him from presiding. His interest is merely in the status of his indebtedness to the corporation; and as to any matters pertaining to this he can, of course, not preside, but there must be a special chancellor. But it is carrying the rule to a most unwarranted extreme to hold that the mere fact of his being indebted to a bank disqualifies a chancellor from presiding in receivership proceedings, especially where the appointment of the receiver does not rest with the chancellor, but arises from the independent act of the corporation, inasmuch as the assignee of the corporation becomes, under the statute, the receiver of the court.

But even if the allegation of interest were sufficient, and the interest of the judge by reason of his being a debtor of the corporation was sufficient to disqualify him, we fail to see of what advantage the same would be to appellants. They have elected to treat the peculiar document filed by them as a cross-petition. As cross-petitioners their rights were governed exclusively by the provisions of chapter 8 of the code of 1892, and they were entitled to the rights there given, provided they should succeed in showing the court that the assignment was fraudulent, or ought not for other reasons to be enforced. Conversely it must follow that unless they should succeed in showing to the court that the assignment was fraudulent or ought not to be enforced, they would be entitled to no relief, even if the presiding judge were disqualified.

It is contended by appellants that the lower court erred in compelling complainants to elect whether they would proceed by way of original bill or by cross-petition. We think it a complete answer to appellants' contention of error as to this, to say that even if the court erred, appellants are not in position to complain of the error. If they desired this court to review the action of the court below in this particular, they should have declined to elect, and then have appealed from the decree which would have been rendered dimissing their bill or petition. They have no right to make an election, test their rights as they have done, and then, after finding themselves unsuccessful, complain because they had been required to act.

Appellants had a perfect right to pursue one of two courses entirely separate and distinct: To file an original bill, treating the assignment as a nullity or relating to matters not affected by the assignment; or to come in under Code 1892, ch. 8, as cross-petitioners, to show the court that the assignment should not be enforced. The rules of practice and pleading governing the first course would have been found in the general rules of equity pleading and practice, while the procedure in case the second course had been pursued, would have been governed entirely by the code chapter mentioned. The distinction between these two courses is shown in *Lowenstein* v. *Hooker,* 71 Miss., 102 (s.c., 14 South. Rep., 531).

The first question which confronted the court in this cause was, how did counsel intend to proceed? From the face of the bill or petition of appellants the court could not say. The paper filed by appellants was a marvelous production, fearfully and wonderfully made, and we distrust our ability to analyze it. It styled itself a "cross-petition or bill of complaint." But which was it? Learned counsel for the appellants, complainants below, after much labor brought into the court below this queer progeny, and insisted upon thrusting upon the court the unsolicited honor of christening their offspring, a hardship which the law does not impose. 4 Am. & Eng. Dec. in Eq., 206. It

would have been a harsh imposition upon the court if it had been compelled to stand god-father for this nameless waif. In the absence of a name given by its parents it would have been right for the court to eject, kindly but firmly, this anonymous child from the hall of justice, and return it to its parental roof in order that those who brought it into being should be given the opportunity to care for it.

We accordingly insist that it was proper for the court below to require the appellants to say at the very outset whether they would proceed by cross-petition or by original bill. It will be noted that it is nowhere insisted by appellants that the assignment was tainted with fraud. No valid reason is given why it should not be enforced. The assignment conveyed everything, and under the code chapter in reference to assignments in the lower court, a court of equity, had ample jurisdiction to adjudicate the rights of all parties on proper application.

As regards the contention of appellants relative to the funds on deposit by the sheriff and levee boards, respectively, the same is amply discussed by associate counsel. We will merely say that the action of the court below appears correct. But even if it were incorrect, appellants cannot seek a review of the rulings of the court below in this form presented. It would have been a simple procedure for appellants, as creditors, to have appealed from the decree recognizing the priority of public funds in the distribution of the bank's assets; and there would have been no necessity of confounding it with innumerable other questions, as is sought to be done in this proceeding.

In conclusion we submit that the demurrers to the petition were rightly sustained. The general charge that the assignment was not "lawfully executed" does not state facts sufficiently explicit to show the court wherein the assignment was unlawful.

*Shields & Boddie,* on the same side.

Touching only on that part of the case which concerns the question of public trust funds as a charge upon the assets of

the bank, we submit that under Code 1892, § 3077, as construed in *Fogg* v. *Bank of Friars Point,* 80 Miss., 755 (s.c., 32 South. Rep., 285), public funds deposited in a bank by county or levee board officials are trust funds, which in case of assignment made by the bank for benefit of creditors, are entitled to be paid in full in preference to other general creditors, although no part of the assets of the bank can be designated as being the funds so deposited or proceeds of the same.

That the public officials depositing the fund with the bank are required to give bond does not affect this right to a priority in payment.

CALHOON, J., delivered the opinion of the court.

The complaint of appellants in the court below is presented in two aspects, and is filed by depositors, holders of exchange, and one stockholder of appellee bank, against the bank, its officers, directors, guarantors, sureties, assignee-receiver, and certain public officials; it seeks a variety of relief against a variety of separate independent acts of commission and omission, styles itself "a cross-petition or bill of complaint," and asks the court to treat it "as a cross-petition or bill of complaint as their equities may require," and "that this cross-petition be treated as a cross-petition or bill of complaint, as this court may deem proper and necessary." On motion of defendants the complainants were compelled to elect whether they would proceed as upon original bill in equity, or as upon cross-petition under Ann. code of 1892, ch. 8, in reference to "assignments for benefit of creditors." To this action compelling election they excepted, and then elected to stand in the court as upon cross-petition, whereupon a demurrer to it as such was sustained. Appended to this instrument is what appears on its face to be a perfectly valid general assignment, without preferences, for the equal benefit of all creditors, of every species of property, right, and claim, to one Atterbury, as assignee, against whom no objection appears, but who subsequently resigned, and J. S.

Walker, president of the bank, was appointed in his stead, and he is objected to as being interested. Objection is made to the allowance of a prior claim of the sheriff for public moneys deposited, which they say should be postponed to previous depositors. Another objection is in these words: "That the chancellor passing upon said matters and making the orders therein was disqualified to act in the matter, adjudicate thereon, or to make the orders, decrees, and appointments therein made, because he was a party to said suit and interested in the cause, and is still a party thereto and interested therein."

On the point of the deposit by the sheriff we decide that it was a trust fund, under Ann. Code 1892, § 3077, and entitled to priority of payment out of the assets of the bank. *Fogg* v. *Bank,* 80 Miss., 755 (s.c., 32 South. Rep., 285).

The averment that the chancellor was disqualified because "a party to said suit and interested therein," is insufficient, because it is not explained how he was a party or how interested. He nowhere appears to be a party on the pleadings, nor is it shown how he was interested.

It was correct to compel complainants to elect whether they would proceed by way of original bill or by cross-petition under chapter 8 of the code. It is not insisted that the assignment was fraudulent, nor is any valid reason given why it should not be enforced. It conveyed everything, and under it the various suits necessary, as indicated in the complaint, to recover property or money rights, may be instituted by the assignee and receiver at the instance of any creditor. The two proceedings sought to be simultaneously or alternately prosecuted in the same proceeding were properly disallowed.

The general charge that the assignment was not "lawfully executed," etc., is demurrable in not stating facts to show the court in what particular it was unlawful. On its face it appears perfectly valid and lawful. If there was, as complained of, an improper assignee or receiver in charge, it is no basis for this bill. Any creditor could apply for his discharge.

*Affirmed.*